Matthew L. Johnson (6004)
Russell G. Gubler (10889)
JOHNSON & GUBLER, P.C.
Lakes Business Park
8831 W. Sahara Ave.
Las Vegas, NV 89117
Phone: (702) 471-0065
Fax: (702) 471-0075
Email: mjohnson@mjohnsonlaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| TONOPAH & TIDEWATER RAILROAD CO.; ETON TRANSPORTATION CORP.; ENVIRONMENTAL TRANSPORTATION OF NEVADA, LLC D/B/A ETON; and MITCHELL TRUMAN,<br><br>                    Plaintiffs,<br><br>vs.<br><br>CLARK COUNTY, NEVADA, a political subdivision; CLARK COUNTY DEPARTMENT OF ENVIRONMENT AND SUSTAINABILITY, DIVISION OF AIR QUALITY, a political subdivision of Clark County, Nevada;  CANDUELLA ROWSELL, individually and in her official capacity as Air Quality Specialist for the Clark County Department of Environment and Sustainability, Division of Air Quality; KATRINKA BYERS, individually and in her official capacity as Senior Air Quality Specialist for the Clark County Department of Environment and Sustainability, Division of Air Quality; ANDREW KIRK, individually and in his official capacity as Senior Air Quality Specialist for the Clark County Department of Environment and Sustainability, Division of Air Quality; DAVID DEAN, individually and in his official capacity as Air Quality Supervisor for the Clark County Department of Environment and Sustainability, Division of Air Quality; NOEL CRANDALL, individually and in his official capacity as Air Quality Specialist for the Clark County Department of Environment and Sustainability, Division of Air Quality; Doe Air Quality Specialist 1 through X, inclusive; Air Quality Supervisor 1 through X, inclusive; John Does 1 through X, inclusive, Does I through X; Political Subdivision Does I through X,<br><br>                    Defendants. | Case No.<br><br>**VERIFIED COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

Plaintiffs, TONOPAH & TIDEWATER RAILROAD CO.; ETON TRANSPORTATION CORP.; ENVIRONMENTAL TRANSPORTATION OF NEVADA, LLC D/B/A ETON; and MITCHELL TRUMAN, (collectively, "Plaintiffs"), through their attorneys of the law offices of JOHNSON & GUBLER, P.C., hereby bring this action under 42 U.S.C. §1983 and §1985, and  28 U.S.C. §2201-2202, to redress their civil and legal rights, and allege as follows:

**PRELIMINARY STATEMENT**

1. This is a civil rights action in which the Plaintiffs seek relief for the defendants' violations of Plaintiffs' rights secured by the Civil Rights act of 1871, 42 U.S.C. §1983, 42 U.S.C. §1985, 28 U.S.C. §2201-2202, 28 U.S.C. §1331, by the United States Constitution, including the Commerce Clause, and the Fourth, Fifth, Seventh, and Fourteenth Amendments, and by the laws and/or Constitution of the State of Nevada. Plaintiffs seeks compensatory and punitive damages, injunctive relief, declaratory relief, an award of costs, interest and attorney fees, and such other and further relief as this Court deems just and proper.

2. This Court has authority pursuant to 42 U.S.C. § 1983 to award appropriate actual, consequential, compensatory, and punitive damages, and has authority under 42 U.S.C. § 1988 to award attorney fees and costs to successful civil rights plaintiffs.

**JURISDICTION AND VENUE**

3. This action is brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, and the Commerce Clause, as well as the Fourth, Fifth, Seventh, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343, and 2201-2202, this being an action seeking redress for the violation of the Plaintiffs' constitutional and civil rights, which arise under the Constitution and laws of the United States, to redress deprivations under color of state law.

4. Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties that are so related to

- 2 -

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b) & (c) in that Defendants CLARK COUNTY, NEVADA and CLARK COUNTY DEPARTMENT OF ENVIRONMENT AND SUSTAINABILITY, DIVISION OF AIR QUALITY and their subdivisions, employees, and agents, are administratively located within the District of Nevada, and the events that give rise to Plaintiffs' claims took place within the District of Nevada.

### DEMAND FOR JURY TRIAL

6. Plaintiffs demand a trial by jury on each and every one of their claims as pleaded herein.

### PARTIES

7. TONOPAH & TIDEWATER RAILROAD CO. (TTRC) is a railroad company, and a corporation, organized under the laws of the State of Nevada, owning property, conducting business in Clark County, Nevada, and causing other business to be conducted through interstate commerce.

8. ETON TRANSPORTATION CORP. (ETC) is a corporation, organized under the laws of the State of Nevada, owning property, conducting business in Clark County, Nevada, and causing other business to be conducted through interstate commerce.

9. ENVIRONMENTAL TRANSPORTATION OF NEVADA, LLC D/B/A ETON (ETON) is a business entity, organized under the laws of the State of Nevada, owning property, conducting business in Clark County, Nevada, and causing other business to be conducted through interstate commerce.

10. MITCHELL TRUMAN (Truman) is a manager for TTRC, ETC, and ETON, and is a resident of the State of Nevada.

11. Defendant CLARK COUNTY (CC), is a political entity, created and authorized under the laws of the State of Nevada.

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

12.     Defendant, CLARK COUNTY DEPARTMENT OF ENVIRONMENT AND SUSTAINABILITY, Division of Air Quality (DES), is a subdivision of Clark County, Nevada, which acts as its agent in the area of maintaining air quality and for which CC is ultimately responsible. DES is the agent for CC.

13.     Defendant, CANDUELLA ROWSELL (Rowsell), is an Air Quality Specialist with DES, and upon information and belief, is a resident of Clark County, Nevada.

14.     Defendant, KATRINKA BYERS (Byers), is a Senior Air Quality Specialists with DES, and upon information and belief, is a resident of Clark County, Nevada.

15.     Defendant, ANDREW KIRK (Kirk), is a Senior Air Quality Specialist with DES, and upon information and belief, is a resident of Clark County, Nevada.

16.     Defendant, DAVID DEAN (Dean), at all relevant times, is or was an Air Quality Supervisor with DES, and upon information and belief, is a resident of Clark County, Nevada.

17.     Defendant, NOEL CRANDALL (Crandall), is an Air Quality Specialist with DES, and upon information and belief, is a resident of Clark County, Nevada.

18.     Defendant CC assumes the risks incidental to establishing standards and monitoring air quality issues through DES and its employees.

19.     Defendants CC and DES were at all times relevant herein the public employers or in control of Rowsell, Byers, Kirk, Dean, Crandall, Doe Air Quality Specialist 1 through X, Air Quality Supervisor 1 through X, and John Does 1 through X.

20.     Defendants, Rowsell, Byers, Kirk, Dean, Crandall, Doe Air Quality Specialist 1 through X, Air Quality Supervisor 1 through X, and John Does 1 through X, are and were at all times relevant herein duly appointed and acting officers, servants, employees and/or agents of CC and DES. At all times relevant herein, the individual defendants were acting under color of the laws, statutes, ordinances, regulations, policies, customs, contracts, and/or usages of the State of Nevada, CC, and/or DES, in the course and scope of their duties and functions as officers, agents, servants, and/or employees of Defendants CC and/or DES, were acting for, and on behalf of, and with the power and authority vested in them by CC and/or DES, and were

- 4 -

otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. They are sued in their official capacity and individually for any actions outside the scope of their official duties.

21.     This action challenges DES, for exceeding its delegated authority under the Clean Air Act ("CAA") and the federally approved State Implementation Plan ("SIP") by conducting warrantless inspections, adjudicating alleged violations internally, and imposing fines without judicial oversight or due process.

22.     Plaintiffs also seek declaratory and injunctive relief to restore constitutionally required judicial process and to prevent further deprivation of rights protected by the Fourth, Fifth, Seventh, and Fourteenth Amendments to the United States Constitution.

23.     By the conduct, acts, and omissions complained of herein, defendants violated clearly established constitutional standards under the Fourth, Fifth, Seventh, and Fourteenth Amendments to the United States Constitution, as well as the Constitution of the State of Nevada, of which a reasonable person or entity under the circumstances would have known.

24.     Plaintiffs have suffered concrete injuries, including monetary penalties and restrictions on property use, directly traceable to DES's unlawful enforcement.

## NOTICE OF CLAIM

25.     If necessary, Plaintiff timely filed a notice of claim with Defendants CC and/or DES.

26.     To date, Defendants have denied any wrongdoing, and Plaintiffs have received no compensation or relief from the Defendants in response to this claim.

27.     This action has been commenced within 2 years of the date of occurrence of the events giving rise to this Complaint.

## STATEMENT OF FACTS

28.     TTRC was organized in the State of Nevada, with the Nevada Secretary of State on July 9, 2004.

29.     TTRC is a railroad company owning property located at located at 2596 Stratford Ave, Las Vegas, NV 89121 (the "Premises").

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

30.    On September 30, 2004, TTRC filed a verified notice of exemption under 49 CFR 1150.31 to lease and operate a private rail line. TTRC may initiate and provide common carrier rail operations on and over the line. Accordingly, TTRC became a Class III rail carrier. Federal Register Docket No. 34547.[1]

31.    In addition to the Premises, TTRC is the owner of rails, but uses the Premises as one of its facilities and yards, in the assistance of its business of moving goods across state lines, in interstate commerce.

32.    TTRC engages in interstate commerce and works with other railroads in the shipment of items across state lines.

33.    Las Vegas Paving Corporation obtained an easement in or about March of 1997, on certain property located in Clark County, Nevada from Pan Western Corporation, which is on the same property referenced in the Federal Register. This easement was recorded and runs with the land.  *See* Agreement to Convey Easement, recorded with CC Recorder, Instrument No. 199703060001677.

34.    Thereafter, on March 6, 2008, TTRC obtained a Licensing Agreement with Las Vegas Paving Corporation that allows TTRC to "Operate [an] industrial railroad on the property."

35.    In 2010, TTRC purchased the physical steel rails from Pan Western that are held on that same property.

36.    These rails are stationary on the property. Rail cars are able to switch lanes, which requires an operator. These are all features common to rails, railroads, and trains.

37.    Further, in May 2018, TTRC entered into a lease agreement with Pabco Gypsum to rent a commercial premises for access to load and unload rail cars. Further, TTRC owns and operates certain railroad rooling stock, railroad loading equipment in the furtherance of the railroad duties to support the local communities railroad shipping needs.

---

[1]On December 14, 2006, a similar publication in the Federal Register was published by a sister company. Register Docket No. 34958. However, an objection was made, and TTRC moved forward as the railroad company owning, operating, and repairing rail lines.

38. In the furtherance of TTRC's federally assigned duties to maintain safe railroad service, TTRC bought a Caterpillar D9L with a serial # of 7G426.

39. This tracked bulldozer is kept in the ready mode for immediate deployment at the Premises, 24 hours a day, 7 days a week, in the event of a rail derailment, to open up rail service.

40. TTRC entered into a lease with ETC related to the Premises.

41. ETC obtained a dust control permit for grubbing, effective August 30, 2023. However, neither ETC, nor the other Plaintiffs, agreed to grant access to the Premises, without showing the appropriate credentials. Although ETC applied for a permit that agreed to access during normal business hours, it still expected persons to check in the office at the Premises.

42. During its occupancy, ETC performed services for TTRC at the Premises in the assistance of its business of moving goods across state lines, in interstate commerce.

43. Since January 1, 2024, TTRC has occupied the Premises.  TTRC and Truman, individually, did not apply for or execute a dust control permit.

44. On January 8, 2024, Rowsell trespassed and entered the Premises, to perform an "inspection" of the Premises, despite Plaintiffs' expectation of privacy on the Premises, which is apparent by the clear No Trespass signs, signs to check into the office, gate, and security personnel.  Rowsell entered the Premises, but did not request to enter the Premises, and did not present appropriate credentials.

45. Plaintiffs confronted Rowsell for her trespassing and questioned who she was and her authority. Thereafter, DES harassed Plaintiffs and treated Plaintiffs differently compared to other property owners similarly situated.

46. On January 9, 2024, Byers, Dean, and Kirk trespassed and entered the Premises, to perform an "inspection" of the Premises, despite clear No Trespass signs and signs to check into the office, and despite telling Rowsell the day before that all persons were to check into the office.  Byers, Dean, and Kirk entered the Premises, but did not request to enter the Premises, and did not present appropriate credentials. Again, Plaintiffs confronted Byers, Dean, and Kirk for their trespassing and questioned who they were and their authority.

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

- 7 -

47. Defendants conspired to use their positions in Clark County to fine Plaintiffs.

48. On January 17, 2024, and February 1, 2024, despite the aforementioned signs and already being told to check into the office, Rowsell again trespassed and entered the Premises, to perform an "inspection" of the Premises. Rowsell entered the Premises, but did not request to enter the Premises, and did not present appropriate credentials.

49. On July 17, 2024, Rowsell and Kirk appeared at the Premises to perform an "inspection" of the Premises. Rowsell and Kirk did not present appropriate credentials.

50. On July 25, 2024, Kirk appeared at the Premises. Kirk did not request access to the Premises and did not present appropriate credentials. As a result, access to the Premises was denied.[2]

51. On July 31, 2024, Rowsell and Crandall appeared at the Premises. Rowsell and Crandall did not request access to the Premises and did not present appropriate credentials. As a result, access to the Premises was denied.

52. On August 7, 2024, Rowsell and Crandall appeared at the Premises. Rowsell and Crandall did not request access to the Premises and did not present appropriate credentials. As a result, access to the Premises was denied.

53. On August 14, 2024, Rowsell and Crandall appeared at the Premises. Rowsell and Crandall did not request access to the Premises and did not present appropriate credentials. As a result, access to the Premises was denied.

54. On information and belief, Rowsell, Byers, Dean, Kirk, and Crandall do not possess appropriate credentials that would verify that they are inspectors for DES. Appropriate credentials would be a badge, with a name, photograph, credential number, department, affiliation, chip, and an indication of the person's authority. Further, the credentials would also need to be appropriately presented.

---

[2]Clark County Air Quality Regulations (AQRs) Section 4.1(d)(1) states that no person shall refuse access if the Control Officer requests entry for inspection and presents appropriate credentials.

55.     At no time on these dates (or before) did any of the Defendants purportedly from CC ever present or attempt to present any credentials, showing that they were officers with DES.

56.     On information and belief, CC and DES requires soil stabilization standards 24 hours a day, seven days a week on the Premises, which includes either consistent water or asphalt, and which unreasonably burden and interfere with interstate commerce and railroad activities.

57.     Within a reasonable time after Defendants' inspection, Plaintiffs investigated, sought expert advice, and determined that chat and roto mill materials were the best application for the Premises as a dust palliative.

58.     As a result, TTRC applied 6 inches of chat and 6 inches of roto mill to the Premises as a dust palliative, with the materials at least 1/4 inch in size.

59.     Thereafter, on information and belief, employees of DES again inspected the Premises and found that no violation existed on the Premises.

60.     Nevertheless, Plaintiff ETC received a Notice of Violation #9994, from DES for failing to employ Best Available Control Measures and to comply with soil stabilization standards 24 hours a day, seven days a week, before March 2024, under AQR Sections 94.13(a) and (b).

61.     On August 29, 2024, Plaintiffs ETON, ETC, and Truman received another Notice of Violation, #10078, from DES for failing to employ Best Available Control Measures and to comply with soil stabilization standards 24 hours a day, seven days a week and for refusing to allow access to the Premises, between June through August 2024, under AQR Sections 94.13(a) and (b) and Section 4.1(d)(1), even though Defendants failed to present appropriate credentials.

62.     Further, the aforementioned notices were issued, even though Defendants never conducted any tests required by AQR's.

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

63. On November 7, 2024, despite procedural, constitutional, and jurisdictional arguments, DES refused to consider the arguments and entered an order fining ETC $3,500.00 under Notice of Violation #9994.

64. On November 7, 2024, despite procedural, constitutional, and jurisdictional arguments, DES refused to consider the arguments and entered another order fining ETC, ETON, and Truman an additional $17,250.00 under Notice of Violation #10078.

65. The matters were both appealed to the DES Control Board.

66. During the appeal hearing, it was known that roto mill had been placed on the Premises. Board Chair Sanders of the Control Board stated the following:

> 14 CHAIR SANDERS: I don't think there's any
> 15 argument on whether or not roto mill is appropriate. I
> 16 think it was just a matter of when it got put down in
> 17 relation to the citations.

67. Board Chair Sanders of the Control Board also stated:

> 12 CHAIR SANDERS: Is it -- is it relevant, I
> 13 think we've already agreed that roto mills' acceptable
> 14 -- dust pallet. Is this still on that argument?

68. Board Chair Sanders of the Control Board also stated:

> 21 CHAIR SANDERS: Well, like I said earlier, I --
> 22 I don't think the argument here is whether or not the
> 23 roto mill is acceptable. I hope it's acceptable because
> 24 -- well, I use the same thing. Everybody that I know
> 25 does and has tracked equipment. And it -- and it is a
> 1 -- a good palliative and -- and it, you know, and you
> 2 can smooth it back out if your tracks mess it up at all
> 3 moving around.

69. Board Chair Sanders of the Control Board also stated:

> 14 CHAIR SANDERS: Well, I -- I saw the -- I saw
> 15 the email that said, you know, and I saw the -- the
> 16 application and -- and where he agreed that he was going
> 17 to pave portions of it. And was even asking an email
> 18 and he said it was going to be three inch overlay. You
> 19 know, I -- I did see that. So he agreed at one time
> 20 that he was going to pave a portion of it. And, you
> 21 know, I think it would've just been a matter of -- of --
> 22 of -- of talking to him with the -- with -- with the air
> 23 quality representatives and say, Hey, look, I'm just
> 24 going to put some roto mill down. I don't think that

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

25 had been an issue.

70.    Board Chair Sanders of the Control Board also stated:

15 CHAIR SANDERS: No. I know all about it.
16 You're preaching to the choir here on that stuff. On
17 the -- the roto mill versus -

71.    Board Chair Sanders of the Control Board also stated:

23 CHAIR SANDERS: Does the board have any
24 questions for Ann? Okay. So there's -- I guess we're
25 at a point then when we decide what we're going to do
1 with this. You know, I -- I can appreciate the fact
2 that you don't want people coming onto the site
3 randomly. You know, I'm familiar with the security
4 requirements and other issues that are related to that.
5 Nevertheless, I -- I, you know, I do agree with
6 the hearing officer's assessment that the violations
7 actually occurred. And it's clear from the timeline
8 that, you know, we had an unstable -- potentially
9 unstable piece of ground up until -- in August when they
10 closed it out and said it was in compliance after the
11 roto mill had been put down.
12 You know, I'm not going to get in the -- or
13 argue the point that -- of -- in my mind and maybe this
14 isn't county regulation. So I -- I don't know if we'll
15 get in trouble here. But, you know, I don't have a
16 problem with the roto mill. And I think that that's an
17 adequate dust palliative when you have a lot of traffic
18 on -- on something and -- and it's moving around and
19 turning and -- and unloading different things. And it's
20 pretty hard to keep the asphalt.
21 As a matter of fact, it's pretty hard to keep
22 it clean let alone keep it from getting damaged with --
23 with that kind of activity. Especially with the D9
24 Dozer that, you know, weighs like a hundred tons,
25 spinning around in there. So -- and I don't -- I don't
1 even know why the dozer is there. But nevertheless, you
2 know, in my mind the -- the -- the rot mill is not an
3 issue.
4 And -- and obviously they -- they accepted it.
5 Showing that you were in compliance after you put it
6 down. So I think the question is, the violations that
7 -- that you're cited for I think they're relevant and I
8 think that they're -- even when they were allowed on
9 site by somebody, you or somebody else, you know, the
10 citation was there.

72. In addition, based on the testimony that was given, without objection or opposing testimony, the parties understood that the permit was closed and the Premises was in compliance.

73. At the appeal hearing, ETC, ETON, and Truman were found to have violated the AQR, up until the roto mill was placed.

74. After the Roto Mill was placed, and upon reviewing the evidence, the DES Control Board repeatedly commented that the roto mill was acceptable.

75. Nevertheless, despite the Control Board Chair's statements, on June 18, 2025, Plaintiffs TTRC, ETC, and Truman received a third Notice of Violation, #10161, from constructing and operating an unpaved parking lot/storage yard at the Premises. DES recommended an additional fine of $15,000 and were assessed at a hearing held by a hearing officer of DES and confirmed by the DES Control Board .

76. At the DES Control Board, DES argued that Plaintiffs did not properly apply for an exemption to apply roto mill instead of paving the Premises. Plaintiffs were not aware and Defendants did not properly notify Plaintiffs or the public that an exemption application was necessary or how to apply for the exemption.

77. After the DES Control Board Hearing, during comments, the DES Control Board Chair asked DES to provide information and clarification regarding the exemptions.

78. The hearing masters and members of the DES Control Board are biased triers of fact as they have been retained by the charging party, and further refuse to consider valid defenses such as presentment, discrimination (selective enforcement), trespass, unlawful searches and seizures, and other constitutional issues.

79. It is impractical to pave the Premises as the bulldozer would destroy the paving, turning it to an equivalent roto-milling state, now on the Premises.

80. Six inches of roto milling is more than an adequate dust palliative to meet the fugitive dust requirement of the EPA clean air act.

81. For companies that use tracked equipment such as bulldozers, trenches, rail equipment, and back hoes in their businesses, black top is not a viable palliative, and roto milling is essentially the only viable or practical dust palliative.

82. Roto milling meets the requirement as a comparable palliative for dust abatement, particularly when there is track equipment operated on the Premises.

83. Professionally, the roto milling on the Premises is more than an adequate dust palliative to meet the fugitive dust requirement of the EPA clean air act.

84. Similarly, there is no difference in the fugitive dust emission leaving a property from a lot paved with asphalt compared to a property covered in roto milling.

85. TTRC's bulldozer weighs approximately 114,656 lbs, and is used throughout the entire Premises.

86. In addition to the bulldozer, TTRC maintains the following equipment at the Premises:

    a. 1- 80,000 lb forklift;

    b. 1 - 200 ton crane;

    c. 2- 36,000 lb forklift;

    d. 2- 25,000 lb forklifts;

    e. 1- 18,000 lb forklift;

    f. 1- 10,000 lb forklift;

    g. 3- 6,000 lb forklifts;

    h. 1- 10,000 gallon rigid body water truck;

    i. Other heavy equipment/trucks weighing approximately 129,000 lbs, when loaded.

87. These heavy pieces of equipment also cover and maneuver over the entire yard.

88. By requiring the Premises to be paved with asphalt, as opposed to roto milling, Clark County will create more air pollution from its actives. The following items are, *inter alia,* needed to make virgin asphalt (all of which are activities that release $CO_2$ into the atmosphere, require additional water to stop dust, and/or wash the material to have it prepared to make asphalt):

    a. Mining the rock;

    b. Fuel manufacturing to prepare fuel for the quarry equipment;

- 13 -

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

c.      Transportation of the fuel to the paving yard;

d.      Power generation to move the fuel from the refinery to the local fuel terminal;

e.      Transportation of the rock by haul trucks from the quarry site to the crusher;

f.      Generator to power the crushing equipment.

g.      Fuel usage to move the material by a loader to and around the plant;

h.      Fuel usage to transport the asphalt oil to the hot plant;

i.      Fuel usage to transfer the asphalt oil from the refiner to the local terminal;

j.      Fuel usage to heat the plant to heat the rock to allow the asphalt oil to adhere to the rock;

k.      Fuel usage for the hot asphalt to be delivered to the site.

l.      Fuel usage for the laydown machine and other equipment to lay the asphalt.

89.     Paving instead of roto milling is not the best practice in this application on the Premises, and other political entities, including North Las Vegas, have confirmed this.

90.     Further, DES' actions are discriminatory in nature, as DES fails to enforce its policies against other rail roads or property owners similarly situated.

91.     Plaintiffs allege that the enforcement of these actions were not based on legitimate regulatory concerns but were part of a broader pattern of selective enforcement, and as part of an ongoing effort to coerce and intimidate the Plaintiffs.. DES singled out Plaintiffs, subjecting them to harsher penalties and/or more frequent inspections than other similarly situated property owners, developers and/or construction companies. This selective enforcement was particularly egregious because other property owners, developers and/or contractors who engaged in similar practices were either not penalized or received significantly less stringent enforcement actions.

92.     The intent of the Air Quality Regulations clearly define intent to address fugitive dusts to "require the reasonably available methods to prevent, reduce or control air pollution throughout Clark County."

93.     However, Defendants were offended by Plaintiffs, then became obsessed with the Plaintiffs.  They determined the Plaintiffs were guilty, then they sought out to find the violations that would fit them and would stop at nothing.

94.     On information and belief, Defendants were motivated by a retaliatory intent and treated Plaintiffs differently, particularly after the Plaintiffs began to challenge the NOVs through legal channels, hired an attorney and required DES to follow the AQR's.

95.     Defendant Dean as a supervisor at DES has admitted, "we are Clark County, we have unlimited resources, and we will win" to persons who challenge DES or its authority.

96.     Further, AQR is invalid, as it is not a state-wide program.

97.     The AQR is not enforced reasonably, as required in the stated intent, and is enforced by the Defendants arbitrarily and capriciously.

98.     The Clean Air Act (42 U.S.C. § 7401 et seq.) requires each state to adopt a State Implementation Plan (SIP) to achieve national ambient air quality standards. Once approved by the U.S. Environmental Protection Agency (EPA), a SIP has the force of federal law. 42 U.S.C. § 7410.

99.     Local agencies such as DES may enforce the SIP but may not impose emission standards or enforcement procedures inconsistent with or beyond the SIP's scope.

100.    DES's enforcement of Air Quality Regulation (AQR) Section 94 exceeds and conflicts with the federally approved SIP. Its warrantless searches, arbitrary penalty determinations, and closed administrative tribunals violate both federal law and the U.S. Constitution.

101.    Fruit of the poisonous tree is a doctrine that extends the exclusionary rule to make evidence inadmissible if it was derived from evidence that was illegally obtained. If the evidential "tree" is tainted, so is its "fruit." *Silverthorne Lumber Co., Inc. v. United States*, 251 U.S. 385 (1920).

- 15 -

102.   On information and belief, in violation of Plaintiffs' established constitutional rights, Defendants (and/or other agents of the Defendants) entered and/or trespassed on the Plaintiff's Premises as described to gather and collect information, without permission, without a warrant, and/or without providing appropriate credentials.

103.   The aforementioned notices of violation were made when Defendants illegally obtained evidence and/or information when Defendants wrongfully trespassed and entered the Premises.

104.   In using the information wrongfully obtained by way of their illegal search and seizure, the notices of violation were filed against Plaintiffs, as indicated.

105.   This case presents a federal question under 28 U.S.C. § 1331, as it involves the interpretation and application of federal law governing interstate commerce and railroad operations, the Supremacy Clause, and the Fourth, Fifth, and Fourteenth Amendments, and the corresponding laws and Constitution of the State of Nevada.

### FIRST CLAIM
**Deprivation of Rights under the Commerce Clause (Article I, Section 8, Clause 3 of the U.S. Constitution) and under 42 U.S.C. §1983**

106.   Plaintiffs repeat and re-allege the allegations contained in the foregoing paragraphs as if fully restated herein.

107.   The Supremacy Clause establishes that federal laws made in accordance with it, and treaties made under federal authority are the supreme law of the land.

108.   The ICCTA (Interstate Commerce Commission Termination Act) grants the Surface Transportation Board (STB) exclusive jurisdiction over "transportation by rail carriers" and related facilities, under which "transportation" is broadly defined to include vehicles, facilities, and equipment related to the movement of property or passengers by rail, regardless of ownership or agreements concerning use. *Ass'n of Am. R.R. v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094 (9th Cir. 2010).

109.   This definition encompasses activities such as parking vehicles, trailers, and mobile office spaces on property used for rail transportation, as these activities are considered

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

part of the operation of rail facilities, even if the tracks are located entirely within one state. *Ass'n of Am. R.R. v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094.

110. This jurisdiction preempts state and local regulations that attempt to manage or govern rail transportation, including zoning laws, if such regulations interfere with rail operations. *See BNSF Ry. Co. v. Clark Cty.*, 11 F.4th 961 (9th Cir. 2021).

111. The Commerce Clause also limits the authority of state entities, including CC and DES, which cannot enact laws that discriminate against or burden interstate commerce. In conjunction with being a railroad carrier and transporting goods across state lines, TTRC and Environmental are Hazmat carriers and are required under PHMSA to develop and apply a site safety plan to protect their surrounding areas from unlawful access to the property and negligent or intentional release of hazardous material under HM-232. However, CC and DES will not acknowledge or abide by the safety plan required by federal law and insist on trespassing onto the Property, causing potential harm to the surrounding area from accidental or neglectful release of hazardous materials. For example, Defendant Dean informed Plaintiffs that he did not need credentials to go onto the Nevada Test Site, nor did he need credentials or permission to enter the Premises.

112. The enforcement of local air regulations against Plaintiffs and their employees unreasonably burdens and interferes with railroad activity and/or interstate commerce, and are further discriminatory, which is subject to federal regulation and preemption.

113. The local AQR and fines/penalties against Plaintiffs and their agents are preempted by federal law, specifically the Commerce Clause (Art. I, §8, Cl. 3) and the Supremacy Clause (Art. VI, Cl. 2) of the United States Constitution.

114. Defendants knew and understood that their actions or failure to act, would constitute a conscious disregard of Plaintiffs' rights.

115. Each Defendant denied access to and knowingly disregarded Plaintiffs' rights, and further attempted to disregard Plaintiffs' rights to liberty, property, and the pursuit of happiness.

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

116. All of the foregoing actions or inactions were in violation of Plaintiffs' rights protected by the United States Constitution.

117. All of the foregoing actions or inactions were done or performed under color of state law.

118. Defendants' actions or inactions directly and proximately caused harm to Plaintiffs and deprivation of Plaintiffs' rights.

119. Plaintiffs have been required to retain the services of attorneys to prosecute this matter and therefore are entitled to reasonable attorneys' fees and costs in this action.

**SECOND CLAIM**
**Deprivation of Rights under the Fourteenth Amendment and under 42 U.S.C. §1983**

120. Plaintiffs repeat and re-allege the allegations contained in the foregoing paragraphs as if fully restated herein.

121. The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This clause is intended to prevent states and their agencies from treating individuals or entities differently under the law without a legitimate governmental interest and requires that Defendants treat Plaintiffs in the same manner as other similarly situated persons and/or entities.

122. Equal protection forces a state to govern impartially-not draw distinctions between individuals solely on differences that are irrelevant to a legitimate governmental objective. The equal protection clause is crucial to the protection of civil rights.

123. The Premises is located in Clark County, Nevada and is used in the same manner that other properties, similarly situated, are used.

124. However, Defendants discriminated against Plaintiffs and their employees, when compared to similarly situated properties that use their properties similarly, including but not limited to the following properties:  16221802005, 16221802002, 16221802001, 16221810009, 16221810005, 16221810007, 14014501001, 14016301001, 12329801003, 12329801009, 12329801011, 12329801004, 12329801001, 12332301015, 12332301016, 12332301009,

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

12332301008, 12332301018, 12331402015, 14006110018, 13901702004, 13910704004, 13910703003, 13910702003, 13910702002, 13910701002, 13910802001, 13910501015, 13915501012, 13915501025, 13915611005, 13916201013, 13916201014, 13916101004, 13916101005, 17623401005, 17623401015, 17623410007, 17623410009, 17623701005, 17623801007, 17623701015, 17623301015, and 17623601012.

125. Alternatively, Defendants discriminated against Plaintiffs and their employees, when compared to similarly situated properties that use their properties similarly and cover the properties with roto mill.

126. The notices of violation discriminated against Plaintiffs and their employees.

127. Defendants engaged in a pattern of selective enforcement by targeting Plaintiffs for violations of air quality regulations, while failing to similarly enforce these regulations against other similarly situated developers, construction companies, and/or property owners who engaged in similar practices.

128. This selective enforcement was arbitrary, capricious, and motivated by improper considerations, including personal animosity and retaliation against Plaintiffs, particularly against Truman. Defendants' actions were not based on any legitimate governmental interest or objective criteria but were instead designed to harm and disadvantage Plaintiffs.

129. Plaintiffs have been treated differently from other similarly situated entities and individuals who have violated the same or similar air quality regulations but have not been subjected to the same level of scrutiny, penalties, or enforcement actions. This disparate treatment has no rational basis and serves no legitimate governmental purpose.

130. Defendants knew and understood that their actions or failure to act, would constitute a conscious disregard of Plaintiffs' rights.

131. Each Defendant denied access to and knowingly disregarded Plaintiffs' rights, and further attempted to disregard Plaintiffs' rights to liberty, property, and the pursuit of happiness, and the Defendants have discriminated against Plaintiffs.

132. All of the foregoing actions or inactions were in violation of Plaintiffs' rights protected by the United States Constitution.

133. All of the foregoing actions or inactions were done or performed under color of state law.

134. Defendants' actions or inactions directly and proximately caused harm and deprivation of rights to, and the Defendants discriminated against Plaintiffs.

135. Plaintiffs have been required to retain the services of attorneys to prosecute this matter and therefore are entitled to reasonable attorneys' fees and costs in this action.

## THIRD CLAIM

**Deprivation of Rights under the Fourth and Fourteenth Amendments and under 42 U.S.C. §1983**

136. Plaintiffs repeat and re-allege the allegations contained in the foregoing paragraphs as if fully restated herein.

137. The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures by the government, requiring warrants based on probable cause and describing the place to be searched and the items to be seized.

138. The Fourth Amendment prohibits unreasonable searches of private property without a judicial warrant, consent, or exigent circumstances (*Camara v. Municipal Court*, 387 U.S. 523 (1967); *See v. City of Seattle*, 387 U.S. 541 (1967)).

139. Each and every such entry constitutes an unreasonable search in violation of the Fourth Amendment as applied to the states through the Fourteenth Amendment. *See Camara v. Municipal Court*, 387 U.S. 523 (1967); *See v. City of Seattle*, 387 U.S. 541 (1967) (foundational administrative search cases holding that commercial premises are protected by the Fourth Amendment and that warrantless inspections under local codes are unconstitutional absent consent or exigency).

140. Evidence obtained unlawfully cannot be used in court against the Plaintiffs, under the Exclusionary Rule, and as extended under the Fruit of the Poisonous Tree doctrine.

141. As set forth on the dates above, Defendants or their agents entered onto the Premises, entered and photographed the Premises without warrants or consents, constituting an unlawful trespass and an unreasonable search in violation of the Fourth Amendment. This

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

action was taken despite the lack of any warrant, consent, exigent circumstances or other legal justification that would permit such a warrantless entry.

142.    Defendant then proceeded to obtain evidence through unlawful searches and seizures in violation of Plaintiffs' rights.

143.    Plaintiffs objected to the unauthorized entry, but Defendants and their agents asserted it had administrative authority to enter without permission or warrants and sought to enforce their wrongful acts by claiming that Plaintiffs sought to obstruct, hamper, or interfere with Defendants' inspections and by further fining Plaintiffs excessively.

144.    DES and its agents collected evidence and subsequently issued NOVs alleging dust-control deficiencies despite no request for entry for inspection, no presentation of appropriate credentials, and no evidence of air quality impact.

145.    Defendants' unlawful entry was further motivated by retaliation, as Plaintiffs had exercised their legal rights by challenging the Notices of Violation issued by DES and by seeking legal recourse. The trespass was part of a broader pattern of selective enforcement and harassment directed at Plaintiffs, particularly against Truman, personally.

146.    Defendants knew and understood that their actions or failure to act, would constitute a conscious disregard of Plaintiffs' rights.

147.    Each Defendant denied access to and knowingly disregarded Plaintiffs' rights, and further attempted to disregard Plaintiffs' rights to liberty, property, and the pursuit of happiness.

148.    Defendant's conduct reflects an official policy or custom of warrantless inspection by DES. *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978) similarly struck down warrantless OSHA inspections of businesses.

149.    The Clean Air Act does not displace Fourth Amendment protections; indeed, EPA inspection authority under 42 U.S.C. § 7414 is expressly conditioned on either consent or warrant.

150.    All of the foregoing actions or inactions were in violation of Plaintiffs' rights protected by the United States Constitution.

- 21 -

151. All of the foregoing actions or inactions were done or performed under color of state law.

152. Defendants' actions or inactions directly and proximately caused harm and deprivation of rights to Plaintiffs.

153. Plaintiffs have been required to retain the services of attorneys to prosecute this matter and therefore are entitled to reasonable attorneys' fees and costs in this action.

**FOURTH CLAIM**

**Violation of Procedural and Substantive Due Process under the Fifth and Fourteenth Amendments and under 42 U.S.C. §1983**

154. Plaintiffs repeat and re-allege the allegations contained in the foregoing paragraphs as if fully restated herein.

155. The Due Process Clause of the Fifth Amendment and Fourteenth Amendments to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law", protects individuals and entities from arbitrary and unfair government actions that infringe upon their rights, and prohibits the government from depriving any person of life, liberty, or property without due process of law.

156. The Fourteenth Amendment requires fair notice, a neutral decision-maker, and judicial review before deprivation of property (*Mathews v. Eldridge*, 424 U.S. 319 (1976); *Tumey v. Ohio*, 273 U.S. 510 (1927)).

157. The Amendments, with their Due Process Clauses, protect individuals when the government deprives them of life, liberty, or property, and limits the government's arbitrary exercise of its powers.

158. Procedural due process requires procedures that the government must follow in criminal and civil matters. Substantive due process protects individuals from government interference.

159. Defendants violated Plaintiffs' due process rights by failing to request entry to the Premises for inspection purposes and by presenting appropriate credentials under AQR Section 4.1(d).

160.    The EPA was not authorized to bypass the State of Nevada when it approved the AQR, as it was required to approve a state-wide implemented plan.

161.    Defendants violated Plaintiffs' due process and the separation of powers by allowing deference to Defendants' own interpretation of applicable statutes and regulations, contrary to *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369 (2024) and *Corner Post, Inc. v. Board of Governors of the Federal Reserve System,* 603 U.S. 799 (2024), despite arguments by Plaintiffs, and when Defendants failed to consider Plaintiffs' procedural, constitutional, and jurisdictional arguments.

162.    The EPA overstepped its authority by approving a non-state-wide implemented program, known as the AQR. Defendants violated Plaintiffs' due process by failing to have clear standards, failing to follow EPA-approved statewide plans, and failing to follow statewide implementation plans. As a result, Defendants' application of the AQR to Plaintiffs is arbitrary.

163.    DES, through its agents, issued to Plaintiffs violations for failing to stabilize soils 24 hours a day, seven days a week.  The AQR's defining "stabilization of soils 24 hours a day, seven days a week" is unconstitutionally vague.  The Las Vegas valley is facing one of the most significant droughts and water restriction measures in history.  The AQR's fail to provide sufficient methods that would be possible without burdening a property owner with undue financial hardship.

164.    Defendants deprived Plaintiffs of their right to procedural due process by failing to provide them with a fair and impartial process in connection with the enforcement actions taken against them. Specifically, Defendants refused to consider valid legal defenses such as such as presentment, discrimination (selective enforcement), trespass, unlawful searches and seizures, and other constitutional issues.

165.    Defendants further violated Plaintiffs' due process rights by presiding over hearings in a manner that demonstrated clear bias and partiality. Plaintiffs were subjected to an enforcement process that was skewed against them from the outset, with Defendants' agents and representatives exhibiting clear animosity and a predetermined intent to find Plaintiffs in violation, regardless of the evidence presented.

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

166. DES has unlawfully acted as prosecutor, judge, and jury in its own enforcement scheme, imposing monetary fines through an internal tribunal without lawful delegation or adequate procedural safeguards.

167. DES's enforcement procedures fail to provide a neutral decision-maker, adequate notice and opportunity to be heard before deprivation of property, or meaningful judicial review.

168. DES's internal hearing officers report to same Board that enforces penalties in violation of *Tumey v. Ohio*, 273 U.S. 510 (1927).

169. DES's lack of any written enforcement standards fails to provide fair notice in violation of *FCC v. Fox Television Stations*, 567 U.S. 239 (2012).

170. Defendants deprived Plaintiffs of their rights to due process by failing to provide Plaintiffs with information, as well as a fair and impartial process in connection with clarity and set guidelines of approval for closing out permits and for approval of exceptions to AQR regulations. The AQR guidelines to close out a permit are procedurally unclear, and Defendants do not have substantive guidelines to close a permit. Defendants act arbitrary and capriciously with what is required to close a permit. Similarly, the AQR's are not clear on what is required to request an exception from the AQR concerning the paving of parking lots. Further, Defendants do not offer assistance, and act arbitrarily and capriciously with the enforcement of the AQR's and/or Defendants' approval of any exceptions.

171. Defendants further violated Plaintiffs' due process rights by fining Plaintiffs.

172. All of the foregoing actions or inactions were in violation of Plaintiffs' rights protected by the United States Constitution.

173. All of the foregoing actions or inactions were done or performed under color of state law.

174. Defendants' actions or inactions directly and proximately caused harm and cause the deprivation of Plaintiffs' rights, including deprivation of property and liberty interests without due process of law, in violation of the Fourteenth Amendment.

175. Plaintiffs have been required to retain the services of attorneys to prosecute

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

this matter and therefore are entitled to reasonable attorneys' fees and costs in this action.

**FIFTH CLAIM**

**Article III and Seventh Amendment Violation (Denial of Jury Trial)**

**(42.S.C. § 1983)**

176.    Plaintiffs repeat and re-allege the allegations contained in the foregoing paragraphs as if fully restated herein.

177.    The Seventh Amendment guarantees a right to a jury trial in suits at common law where legal rights are adjudicated. Administrative agencies may not usurp Article III judicial power absent clear congressional authorization (*Stern v. Marshall*, 564 U.S. 462 (2011); *Granfinanciera v. Nordberg*, 492 U.S. 33 (1989)).

178.    Article III, Section 1 of the U.S. Constitution states that the "judicial power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."  Article III further provides for various protections for the judges of these Article III courts in order to guarantee judicial independence.

179.    Under Article III, this "judicial power shall extend to all cases, in Law and Equity, arising under . . . the Laws of the United States.

180.    The Supreme Court has held that cases implicating an individual's "private rights" must be tried before an Article III court.  *See Stern v. Marshall*, 564 U.S. 462, 495 (2011); *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), which extended Stern's reasoning: even if Congress could assign certain "public rights" to agencies, penalties implicating private property must be tried in Article III courts.

181.    Through AQR 94, DES seeks to impose civil penalties and sanctions that are legal in nature and historically triable before juries. This internal tribunal to nondelegation concerns under Article III — as it lacks congressional authorization to adjudicate federal rights.

182.    An order to pay money to the government in the form of a civil monetary penalty—affects a person's private rights because it results in the confiscation of their private property.

- 25 -

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

183. Because the proceeding here involved an attempt to force Plaintiffs to pay money to the government, the proceeding implicated private rights and should have been brought before an Article III court.

184. While the Supreme Court rejected a Seventh Amendment challenge to the imposition of monetary penalties by ALJs in *Atlas Roofing Co. v. Occupational Safety & Health Review Commission*, 430 U.S. 442 (1977), that case did not involve a claim under Article III. Atlas Roofing holds that if a case is properly tried before an agency judge, then a Seventh Amendment jury need not be provided, but it does not address the circumstances under which monetary penalties may appropriately be imposed by an agency court.

185. Moreover, *Atlas Roofing* rested on the Supreme Court's conclusion that, "when Congress creates new statutory 'public rights,' it may assign their adjudication to an administrative agency." 430 U.S. at 455. That holding does not apply here.

186. DES's procedures for agency adjudication of violations violate Article III insofar as the agency has assumed for itself the power to adjudicate cases affecting property owners' private rights. Even assuming that Congress could permissibly assign such cases to agency judges under Article III (and it cannot), an executive agency cannot assume that judicial power for itself without express and specific direction from Congress.

187. DES's internal tribunal consists of a hearing officer and an appellate board appointed by the same County Commission that oversees DES operations.

188. DES recommended, adjudicated, and affirmed penalties exceeding $30,000 for alleged violations, acting as prosecutor, judge, and jury in violation of Article III and the Seventh Amendment.

189. This violation is compounded by DES's position that interest begins to accrue on its award as soon as the initial hearing officer issues its decision. It violates Article III for an agency court to issue a decision that is treated as if it were the equivalent of a final judgment of an Article III court.

190. Because DES's adjudicatory procedures violate Article III, the decision below should be vacated and DES should be enjoined from taking any action to enforce that decision.

191.    All of the foregoing actions or inactions were in violation of Plaintiffs' rights protected by the United States Constitution.

192.    All of the foregoing actions or inactions were done or performed under color of state law.

193.    Defendants' actions or inactions directly and proximately caused harm and cause the deprivation of Plaintiffs' rights.

194.    Plaintiffs have been required to retain the services of attorneys to prosecute this matter and therefore are entitled to reasonable attorneys' fees and costs in this action.

**SIXTH CLAIM**

**The Penalty Imposed In This Case is An Excessive Fines**

**(5 U.S.C. § 706(2)(B))**

195.    Plaintiffs repeat and re-allege the allegations contained in the foregoing paragraphs as if fully restated herein.

196.    DES imposed a civil monetary penalty in excess of $30,000 for failing to pave property and for allegedly obstructing, hampering, or interfering with Defendants' unlawful inspections .

197.    DES imposed this monetary award without any consideration for the actual amount of harm incurred.  Instead, the DES reasons that any violation of AQR 94 that they otherwise do not decide to excuse and/or enforce, constitutes "harm" that must be penalized.

198.    In fact, to the extent that any harmed occurred at all by this alleged violation, any harm was minimal.

199.    Because DES justified the imposition of this monetary award on grounds of deterrence, this monetary award is punitive and therefore subject to review under the Excessive Fines Clause.

200.    The Supreme Court has held that monetary forfeitures are excessive if they are "grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*,524 U.S. 321, 334 (1998).   Moreover, the Supreme Court has held that punitive damages awards are generally excessive if they exceed the amount of the actual damages

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

incurred. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 497 (2008). In this case, the monetary award vastly exceeds any damages incurred by the workers and is, therefore, excessive.

201. All of the foregoing actions or inactions were done or performed under color of state law.

202. Defendants' actions or inactions directly and proximately caused harm and cause the deprivation of Plaintiffs' rights.

203. Plaintiffs have been required to retain the services of attorneys to prosecute this matter and therefore are entitled to reasonable attorneys' fees and costs in this action.

## SEVENTH CLAIM

### Trespass

204. Plaintiffs repeat and re-allege the allegations contained in the foregoing paragraphs as if fully restated herein.

205. TTRC is the owner of the Premises.

206. Before January, 2024, TTRC posted no trespassing signs and signs to instruct all visitors to check in at the office on the Premises.

207. On information and belief, on the dates set forth above, Defendants, individually, or through their agents, disregarded the no trespassing signs and intentionally, recklessly, or negligently entered on to the Premises.

208. Defendants lacked permission for the entry of the Premises, without requesting entrance, without permission, without a valid search warrant, without presenting appropriate credentials, and without any other legal authority.

209. Defendants invaded TTRC's property rights to the Premises, constituting an unlawful trespass, and caused harm to the Plaintiffs.

210. Defendants' actions and/or inactions were a substantial factor causing harm to the Plaintiffs and were the direct and proximate cause of damages to Plaintiffs.

211. TTRC has been required to obtain the services of an attorney to enforce its property rights, and is therefore entitled to reasonable costs and attorney's fees incurred in prosecuting this matter.

**EIGHTH CLAIM**

**Negligence**

212.    Plaintiffs repeat and re-allege the allegations contained in the foregoing paragraphs as if fully restated herein.

213.    The individual Defendants had a duty of reasonable care toward Plaintiffs to know the AQRs, to respect others' property, and to present appropriate credentials.

214.    For the foregoing reasons, the individual Defendants breached their duty when they acted contrary to the AQR, failed to request permission to enter the Premises, check-in at the office, and to present appropriate credentials to Plaintiffs.

215.    The individual Defendants' aforementioned actions and/or inactions resulted in foreseeable injuries to Plaintiffs.

216.    Defendants' actions and/or inactions directly and proximately caused Plaintiffs to suffer damages and injury.

217.    Plaintiffs have been required to retain the services of attorneys to prosecute this matter and therefore are entitled to reasonable attorneys' fees and costs in this action.

**NINTH CLAIM**

**Abuse of Process**

218.    Plaintiffs repeat and re-allege the allegations contained in the foregoing paragraphs as if fully restated herein.

219.    Under Nevada law, the tort of abuse of process occurs when a party uses a legal process against another primarily to accomplish a purpose for which it is not designed. The essential elements of an abuse of process claim are (1) an ulterior purpose and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding. *See, Land Baron Invs. v. Bonnie Springs Family LP*, 131 Nev., Adv. Op. 69, 356 P.3d 511, 519 (2015).

220.    Defendants engaged in a pattern of conduct that constituted abuse of process. This included the issuance of multiple Notices of Violation against Plaintiffs, not for legitimate regulatory enforcement purposes, but for the improper purpose of harassment,

- 29 -

retaliation, and coercion.

221.   Defendants' ulterior purpose was to punish Plaintiffs for exercising their legal rights, including their right to challenge the NOVs, to seek legal recourse, and to defend themselves against baseless regulatory actions. Defendants sought to intimidate and coerce Plaintiffs into compliance with demands that were not grounded in law or fact, and to penalize them for resisting the improper actions of DES.

222.   In furtherance of this ulterior purpose, Defendants took willful actions that were not proper in the regular conduct of the legal process, including but not limited to:

    a.   issuing NOVs with inflated penalties;

    b.   Conducting inspections and imposing fines without basis, including trespassing on private property without legal authority;

    c.   using the threat of additional penalties and enforcement actions as a means to compel Plaintiffs to abandon their legal defenses and comply with Defendants' arbitrary demands.

223.   These actions were taken with the intent to cause harm to the Plaintiffs and to abuse the legal processes available to the Defendants in their regulatory enforcement roles. The actions were not intended to achieve legitimate regulatory compliance but were instead aimed at punishing and retaliating against Plaintiffs for asserting their rights.

224.   As a direct and proximate result of Defendants' abuse of process, Plaintiffs have suffered substantial damages, including but not limited to financial losses, emotional distress, damage to their reputations, and the incurrence of legal fees and costs to defend against the improper actions taken by Defendants.

225.   Plaintiffs are entitled to compensatory damages for the harm caused by Defendants' abuse of process, as well as punitive damages to deter Defendants and others from engaging in similar conduct in the future.

226.   Plaintiffs seek compensatory and punitive damages, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

227.   Plaintiffs have been required to retain the services of attorneys to prosecute

this matter and therefore are entitled to reasonable attorneys' fees and costs in this action.

### TENTH CLAIM

### 42 U.S.C. §1985

### Conspiracy

228.    Plaintiffs repeat and re-allege the allegations contained in the foregoing paragraphs as if fully restated herein.

229.    Defendants are prohibited from conspiring to deprive Plaintiffs of their rights and privileges.

230.    Defendants conspired to unreasonably burden and interfere with railroad activity and/or interstate commerce, violating one or more laws prohibiting Defendants from discriminating against Plaintiffs, conducting unlawful searches and seizures, violating Plaintiffs' due process rights, and by trying to enforce their wrongful actions through the notices of violation, as set forth above. Further, the individual Defendants conspired to trespass on the Premises.

231.    As a result of the foregoing, Plaintiffs have been injured and/or deprived of having and exercising rights or privileges guaranteed to them as citizen of the United States.

232.    All of the foregoing actions or inactions in furtherance of the conspiracies were done or performed under color of state law.

233.    Alternatively, Defendants, acting individually, conspired to commit the harms set forth herein.

234.    Plaintiffs have been required to retain the services of attorneys to prosecute this matter and therefore are entitled to reasonable attorneys' fees and costs in this action.

### ELEVENTH

### 28 U.S.C. §2201

### Declaratory Judgment

235.    Plaintiffs repeat and re-allege the allegations contained in the foregoing paragraphs as if fully restated herein.

236.    In a case of actual controversy within its jurisdiction, any court of the United

States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

237.   An actual controversy has occurred within the jurisdiction of this Court concerning Plaintiffs' rights.

238.   Defendants seek to deprive Plaintiffs' rights, under color of law.

239.   As a  result of the foregoing, Plaintiffs have been injured and/or deprived of having and exercising rights or privileges guaranteed to them as citizen of the United States.

240.   All of the foregoing actions or inactions were done or performed under color of state law.

241.   Plaintiffs request that this Court make the following declarations:

A.   Defendants have unreasonably burdened and interfered with railroad activity and/or interstate commerce;

B.   Defendants have discriminated against Plaintiffs;

C.   Defendants have conducted and authorized unlawful searches and seizures;

D.   Defendants have violated Plaintiffs' due process rights;

E.   Defendant's policies and practices of conducting warrantless inspections, adjudicating penalties through internal tribunals, and enforcing Air Quality Regulation 94 as applied to Plaintiffs violate the Fourth, Fifth, Seventh, and Fourteenth Amendments to the United States Constitution;

E.   The fines resulting from the notices of violation set forth herein, are invalid, as DES lacked jurisdiction, given Plaintiffs' procedural, constitutional, and jurisdictional arguments.

F.   The notices of violation against the Plaintiffs, as set forth above, are preempted by federal law and stayed;   and

G.    Any other relief as the Court deems appropriate.

242.   Plaintiffs have been required to retain the services of attorneys to prosecute

- 32 -

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

this matter and therefore are entitled to reasonable attorneys' fees and costs in this action.

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    Declare that the conduct of Defendants has violated the rights guaranteed to Plaintiffs under 42 U.S.C. §1983, 42 U.S.C. §1985, 28 U.S.C. §2201-2202, by the United States Constitution, including the Commerce Clause, and the Fourth, Fifth, and Fourteenth Amendments, and by the laws and/or Constitution of the State of Nevada;

B.    Award Plaintiffs nominal, actual, consequential, compensatory, punitive, and any other damages that the Court may deem appropriate against Defendants;

C.    Award Plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other applicable authority;

D.    Issue a permanent and preliminary injunction enjoining the Defendants from engaging in further selective enforcement or retaliatory actions against the Plaintiffs; entering or searching private commercial property without a judicial warrant or consent; adjudicating or enforcing civil penalties through administrative hearings lacking Article III or jury-trial protections; collecting or enforcing any penalties issued against Plaintiffs pursuant to AQR 94; and  requiring Defendants to cease any ongoing enforcement actions that are based on unconstitutional grounds.

E.    Order Defendants to vacate and nullify all administrative fines, penalties, or enforcement actions issued against Plaintiffs under AQR 94;

////

////

- 33 -

D.      Award such further relief as the Court deems appropriate.

Dated this 6th day of January, 2026.

JOHNSON & GUBLER, P.C.

*/s/ Matthew L. Johnson*

Matthew L. Johnson (6004)
Russell G. Gubler (10889)
Lakes Business Park
8831 W. Sahara Ave.
Las Vegas, NV 89117
*Attorneys for Plaintiffs*

**JOHNSON & GUBLER, P.C.**
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

- 34 -

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

## VERIFICATION

STATE OF NEVADA      )
                            ) ss.
COUNTY OF CLARK     )

I, MITCHELL TRUMAN, under penalty of perjury, according to oath, depose and say:

1.      I am a named Plaintiff. I have personal knowledge about the facts included in this Verified Complaint and if called to do so would testify as to their truthfulness.

2.      I have reviewed the facts set forth in the Verified Complaint and to the best of my knowledge and belief, they are true and correct.

3.      Declarant does hereby affirm under penalty of perjury that the assertions of this affidavit are true.

Dated this _5_ of January, 2026.

MITCHELL TRUMAN

- 35 -